# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# BOWLING GREEN DIVISION

**MICHAEL CURRY**                                                                          **PLAINTIFF**

**v.**                                        **CIVIL ACTION NO. 1:20-CV-P159-GNS**

**STEPHEN HARMON et al.**                                             **DEFENDANTS**

## MEMORANDUM OPINION

Plaintiff Michael Curry filed a *pro se*, *in forma pauperis* 42 U.S.C. § 1983 complaint. This matter is before the Court for screening pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). For the following reasons, the complaint will be dismissed.

## I. STATEMENT OF FACTS

Plaintiff was incarcerated at the Warren County Regional Jail (WCRJ) at the pertinent time. He names as Defendants WCRJ Jailer Stephen Harmon and Deputy Jarrod Borden in their individual and official capacities. He also names as Defendant Deputy Andrew Cooper in his official capacity only.

Plaintiff alleges that on February 21, 2020, while at lunch, Defendants Borden and Cooper came to escort him to the body scanner. He explains, "All inmates who work's outside jobs got to go through it." Plaintiff states that Defendants Borden and Cooper took him to the strip search cell where Defendant Borden told him to "strip down" and to do the strip search "different then before. He made me stand straight up and bend over to the waist and press my butt cheeks open." Plaintiff states that he told both Defendants that "it made me feel real uncomfortable that way," and he reports filing a grievance and an appeal afterwards.[1]

---

[1] Since filing his complaint, Plaintiff has supplemented the complaint with exhibits (DN 11) of the grievance he filed and the response he received related to the strip search.

Plaintiff next alleges that when he arrived at WCRJ on February 14, 2020, he asked to be "put on the Kosher tray's because of my religion." He states that he was told that it would take three or four days and that when he finally received the Kosher tray, the food was not Kosher. He states, "Emily Kohler failed to make sure that Kosher people have the right diet." He states that he was only able to eat about three quarters of his food because it was not "made right." He also states that he filed a grievance and an appeal regarding this issue.

Next, Plaintiff alleges that on February 21, 2020, he was moved from a dorm where he was sleeping in a bed to the gym where he had to sleep on the floor. He states that the floor caused him "body pains" and that he "had to sign up for medical because of the pain's in my left leg and both shoulders." He states that he was told by "Medical" that the pain was caused by sleeping on the floor. He further states that he is a state inmate and, therefore, should be sleeping six inches off the ground.

As relief, Plaintiff asks for monetary and punitive damages.

## II. ANALYSIS

When a prisoner initiates a civil action seeking redress from a governmental entity, officer, or employee, the trial court must review the complaint and dismiss the action, if the Court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1) and (2). When determining whether a plaintiff has stated a claim upon which relief can be granted, the Court must construe the complaint in a light most favorable to Plaintiff and accept all of the factual allegations as true. *Prater v. City of Burnside, Ky.*, 289 F.3d 417, 424 (6th Cir. 2002). While a reviewing court must liberally construe *pro se* pleadings, *Boag v. MacDougall,* 454 U.S. 364, 365 (1982) (per curiam), to avoid dismissal, a complaint

must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

### *A. Strip search claim*

Plaintiff alleges that on one day Defendants Borden and Cooper escorted him to the body scanner and then took him to the strip search cell where Defendant Borden told him to "strip down" and to do the strip search a different way than before, *i.e.*, standing straight up, bending over at the waist, and pressing his "butt cheeks open." Plaintiff stated that he told both Defendants that "it made me feel real uncomfortable that way." Attached to the supplement to his complaint (DN 11) is the response from Defendant Harmon to Plaintiff's grievance that the way the strip search was done made him uncomfortable. Defendant Harmon stated that what was described in the grievance "is consistent with proper strip search procedures. The deputy has to ensure you don't have dangerous contraband for the safety and security of the inmates and staff in this building."

The Court finds that Plaintiff has failed to state a Fourth Amendment claim regarding the strip search. Defendant Harmon's response to Plaintiff's grievance evidences that the strip search described by Plaintiff was the proper strip search protocol. Routine strip searches do not violate prisoners' Fourth Amendment rights. *See Bell v. Wolfish,* 441 U.S. 520, 558 (1979); *Jackson v. Herrington*, 393 F. App'x 348, 354 (6th Cir. 2010); *Long v. Henry Cty. Jail*, No. 117CV01141JDBCGC, 2018 WL 4839088, at *2 (W.D. Tenn. Oct. 4, 2018) ("Strip searches are not per se unconstitutional under the Fourth Amendment."). This is true even if a prisoner is required, as happened here, to spread his butt cheeks for examination. *Abrams v. Waters*, No. 3:17-CV-1659 (CSH), 2018 WL 691717, at *9 (D. Conn. Feb. 2, 2018) (finding that prisoner who alleged that he "was subjected to an intrusive strip search in which he was ordered to bend

over at the waist and spread his butt cheek per 'protocol' before being placed in his segregation cell" failed to state a constitutional claim). Accordingly, Plaintiff fails to state a § 1983 claim regarding the strip search.

### B. Kosher diet

Plaintiff next alleges that when he arrived at WCRJ on February 14, 2020, he asked to be "put on the Kosher tray's because of my religion." He states that he was told that it would take three or four days and that when he did receive the Kosher tray, the food was not Kosher. He states that non-Defendant Kohler "failed to make sure that Kosher people have the right diet." He states that he was only able to eat about three quarters of his food because it was "not made right." The complaint was filed in September 2020, by which time Plaintiff was housed at the Logan County Detention Center. The complaint does not state how long Plaintiff was housed at WCRJ. However, Plaintiff has filed another action in this Court in which he states that on February 27, 2020, he was transferred to the Logan County Detention Center. *See Curry v. Gregory*, 1:21-cv-29-GNS, DN 1, p. 7.

First, the Court considers whether Plaintiff has stated a claim under the First Amendment. In the context of a First Amendment free-exercise claim, "'prison administrators must provide an adequate diet without violating the inmate's religious dietary restrictions.'" *Colvin v. Caruso*, 605 F.3d 282, 290 (6th Cir. 2010) (quoting *Alexander v. Carrick*, 31 F. App'x 176, 179 (6th Cir. 2002)). A violation of the First Amendment requires the imposition of a "substantial burden" on a plaintiff's exercise of his religion. *Welch v. Spaulding*, 627 F. App'x 479, 485 (6th Cir. 2015).

Here, according to the complaint, it took several days for Plaintiff to receive a Kosher tray, and when he did receive it, he was only able to eat three-quarters of the food because it was "not made right." The Court deduces, therefore, that three-quarters of the food was Kosher.

4

> The Sixth Circuit Court of Appeals has stated:
>
> The cases bear out that prison administrators must provide an adequate diet without violating the inmate's religious dietary restrictions. For the inmate, this is essentially a constitutional right not to eat the offending food item. If the prisoner's diet, as modified, is sufficient to sustain the prisoner in good health, no constitutional right has been violated.

*Alexander v. Carrick*, 31 F. App'x at 179.

It appears that the allegations of the complaint show that Plaintiff's diet, as modified by Plaintiff by not eating the one-quarter of the food which was not Kosher, was sufficient to sustain him in good health. The Court concludes that these allegations do not show that Plaintiff's practice of religion was substantially burdened because they do not suggest that Defendants' actions placed substantial pressure on Plaintiff to violate his religious beliefs or effectively barred him from practicing his religion. As such, the Court will dismiss Plaintiff's claims under the First Amendment for failure to state a claim upon which relief can be granted.

The Court next will consider whether Plaintiff has stated a claim under the Religious Land Use and Institutionalized Persons Act (RLUIPA).[2] "Courts have recognized that, in the prison context, RLUIPA provides greater protections than the First Amendment." *Fox v. Washington*, 949 F.3d 270, 277 (6th Cir. 2020) (citing *Colvin v. Caruso*, 605 F.3d at 296; *Lovelace v. Lee*, 472 F.3d 174, 199-200 (4th Cir. 2006)). Even so, the Court finds that Plaintiff does not state a claim under RLUIPA. There was a delay in his receipt of Kosher trays, and he was not able to eat one quarter of the Kosher trays because he says the trays were not made "right." This situation, especially in light of the fact that he was only housed at WCRJ for seven

---

[2] Although Plaintiff's complaint makes no mention of RLUIPA, other circuits have held that it is error for a district court not to consider a RLUIPA claim where a *pro se* plaintiff has alleged a constitutional freedom of religion claim. *See Smith v. Johnson*, 202 F. App'x 547, 549 (3d Cir. 2006) ("We apply the relevant law, regardless of whether the *pro se* litigant has identified it by name"; noting that the Second and Tenth Circuits also have remanded cases to the district court for a determination under RLUIPA even where the RLUIPA was not alleged in the complaint). This Court, therefore, construes Plaintiff's complaint as asserting a claim under RLUIPA.

days, does not state a claim under RLUIPA. *See, e.g.*, *Lovelace v. Lee*, 472 F.3d at 194 (holding that accidental, unintentional or negligent actions that may intrude on religious beliefs are not actionable under RLUIPA); *Taylor v. Pelican Bay*, No. C 07-639 MHP (PR), 2010 WL 2671989, at *8 (N.D. Cal. July 2, 2010) (considering, inter alia, in the RLUIPA context whether an intrusion on a religious belief was "relatively short-term and sporadic"). The Court will dismiss the RLUIPA claim.

Finally, the Court considers whether Plaintiff has stated a claim under the Eighth Amendment. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981) (internal quotation marks and citation omitted). The Eighth Amendment, therefore, prohibits conduct by prison officials that involves the "'unnecessary and wanton infliction of pain.'" *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "'minimal civilized measure of life's necessities.'" *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

Plaintiff does not explain how long his Kosher diet situation went on, but at most it was seven days. He does not allege any deleterious effects to his health due to eating only three-quarters of the trays of food, such as losing a harmful amount of weight or being malnourished.

The Court finds that Plaintiff fails to state a claim regarding his diet under the Eighth Amendment. *See, e.g.*, *Alexander*, 31 F. App'x at 179 ("If the prisoner's diet, as modified, is sufficient to sustain the prisoner in good health, no constitutional right has been violated."); *Orum v. Mich. Dep't of Corr.*, No. 2:16-CV-109, 2016 WL 6310279, at *5 (W.D. Mich. Oct. 28, 2016) ("Plaintiff does not allege that his health suffered or that the meals he did receive were inadequate to sustain his health. Consequently, Plaintiff does not state a plausible Eighth Amendment claim."); *Perdue v. Ohio Dep't of Corr.*, No. 1:13cv878, 2014 WL 661707, at *1, *5-6 (S.D. Ohio Feb. 19, 2014) (dismissing claim challenging the quality of religious meals provided as "substandard" and "inadequate" at the screening stage because plaintiff's allegations did not rise to the level of cruel and unusual punishment under the Eighth Amendment where only loss of weight was alleged as injury to health).

### C. Sleeping on the floor

Plaintiff alleges that on February 21, 2020, he was moved from a dorm where he was sleeping in a bed to the gym where he had to sleep on the floor. He states that sleeping on the floor caused him "body pains" and that he "had to sign up for medical because of the pain's in my left leg and both shoulders." He states that he was told by "Medical" that the pain was caused by sleeping on the floor. He further states that as a state inmate he should be six inches off the ground.

A prisoner has no right to sleep on an elevated bed. *See Sanders v. Kingston*, 53 F. App'x 781, 783 (7th Cir. 2002) ("We know of no case holding that the Eighth Amendment requires elevated beds for prisoners, and [plaintiff] does not cite one."); *Mann v. Smith*, 796 F.2d 79, 85 (5th Cir. 1986) ("[The plaintiff] has cited no case holding that the Constitution requires elevated beds for prisoners, and we know of no source for such a right."); *Graves v. Boyd*,

No. 5:16-CV-P51-TBR, 2016 WL 4386102, at *5 (W.D. Ky. Aug. 15, 2016) (recognizing that "a prisoner has no constitutional right to sleep on an elevated bed").

Moreover, to the extent that Plaintiff alleges that requiring him to sleep on the floor and not at least six inches off the floor violated state law, § 1983 does not provide liability for violations of state law. *Neinast v. Bd. of Trs. of Columbus Metro. Library*, 346 F.3d 585, 597 (6th Cir. 2003) ("'The statute [§ 1983] is . . . limited to deprivations of federal statutory and constitutional rights.  It does not cover official conduct that allegedly violates state law.'" (quoting *Huron Valley Hosp., Inc. v. City of Pontiac*, 887 F. 2d 710, 714 (6th Cir. 1989)). Additionally, to the extent that as a state inmate he should sleep six inches off the ground per an administrative rule or policy, a failure to comply with an administrative rule or policy does not itself rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007).

Finally, the fact that sleeping on the floor caused Plaintiff "body pains" does not rise to the level of an Eighth Amendment violation. *Brandon v. Bergh*, No. 2:09-CV-179, 2009 WL 4646954, at *3-4 (W.D. Mich. Dec. 8, 2009) (finding that prisoner's claims that he was required to sleep on a blanket on the floor, which was uncomfortable and caused him to suffer a variety of aches and pains, prompting him to seek help from health services failed to show that he suffered any serious medical problems as a result of his mattress restriction); *Pullum v. Herman*, No. 1:05-CV-365-TS, 2005 WL 2756729, at *2 (N.D. Ind. Oct. 25, 2005) (finding that sleeping on the floor, even though prisoner alleged back pain from doing so, did not deprive prisoner of the minimal civilized measure of life's necessities).  As stated previously, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

## III. CONCLUSION

For the foregoing reasons, the Court will, by separate Order, dismiss the instant action.

Date: May 5, 2021

Greg N. Stivers, Chief Judge
United States District Court

cc: Plaintiff, *pro se*
      Defendants
      Warren County Attorney
4416.009